# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00193-NYW

JERRY ANTHONY SAIZ,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Jerry Saiz's ("Plaintiff" or "Mr. Saiz") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Parties' consent [#12], this civil action was assigned to this Magistrate Judge for a decision on the merits. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

## BACKGROUND

    Mr. Saiz, born March 4, 1963, alleges he became disabled on November 1, 2011, later amended to March 4, 2013, at 50 years-of-age, due to broken ribs, carpal tunnel, back pain, Bell's

palsy, nerve damage, and hernia. *See* [#11-5 at 109; #11-6 at 134; #11-15 at 769].[1] He alleged that he can no longer because his hands and legs will go numb and tingle; he sometimes gets shooting pain in his limbs; and his lower back aches constantly. [#11-6 at 141, 161]. Despite this, Mr. Saiz alleged that he had no issues with personal hygiene or preparing meals, though he cannot do much household work, stand for too long, or carry heavy objects due to his back pain. *See* [*id.* at 142-46].

Given his various ailments, Plaintiff filed his applications for DIB and SSI on May 14, 2013. *See* [#11-4 at 109-13]. The Social Security Administration denied Plaintiff's applications administratively on December 3, 2013. *See* [#11-4 at 57]. Mr. Saiz submitted a request for a hearing before an Administrative Law Judge ("ALJ"), which ALJ Earl W. Shaffer ("ALJ Shaffer") held on April 16, 2015. *See* [#11-15 at 766]. Following the April 16 hearing, ALJ Shaffer concluded Mr. Saiz was not disabled under the Act because Mr. Saiz could perform jobs that existed in the national economy. *See* [#11-2 at 21]. Plaintiff requested Appeals Council review of ALJ Shaffer's decision, which the Appeals Council denied, rendering ALJ Shaffer's decision final. *See* [#11-2 at 1-6; #11-6 at 184-85].

Plaintiff sought judicial review of ALJ Shaffer's decision in the United States District Court for the District of Colorado on September 20, 2016, invoking the court's jurisdiction under 42 U.S.C. § 405(g). *See* [#11-12 at 656]. On September 22, 2017, the Honorable William J. Martínez concluded that ALJ Shaffer had erred in weighing the medical source opinions and remanded this matter back for rehearing. *See* [*id.* at 661-62].

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents the court cites to the document and page number generated by the ECF system.

On remand, Administrative Law Judge Kathryn D. Burgchardt ("the ALJ") conducted a second hearing with Mr. Saiz on July 19, 2018. *See* [#11-15 at 766]. The ALJ received testimony from the Plaintiff and Vocational Expert Douglas Prutting ("the VE") at the hearing. *See* [#11-11 at 594]. Regarding his physical ailments, Mr. Saiz testified that his carpal tunnel was getting worse, with his hands go numb overnight and pain lingering throughout the day. *See* [*id.* at 616-17]. He further testified that his legs go numb if he stands too long and that the bottom of his feet hurt when he stands for roughly ten minutes, with needle-like pain in his feet that does not go away unless he sits for about twenty minutes. *See* [*id.* at 616]. Mr. Saiz added that his lower back pain prevents him from working while his neck pain is only occasionally bothersome. *See* [*id.*]. Despite his ailments, Mr. Saiz testified that he drives his daughters to school and helps care for his grandchildren, though he rarely goes on family outings due to his financial situation. *See* [*id.* at 602-08, 615]. Mr. Saiz also explained that he used to enjoy running and biking, but his foot pain has made it difficult to bike, run, or even go on short walks. *See* [*id.* at 602-08, 611-12, 15].

The VE also testified at the hearing. The VE classified Mr. Saiz's past relevant work experience as a Lawn Care Worker—a heavy exertion job with an SVP of 2. *See* [*id.* at 619]. The ALJ asked the VE to consider what work an individual could perform who was similar to Mr. Saiz and subject to certain physical restrictions, such as standing and walking for six hours in an eight-hour workday with breaks every 10-20 minutes, unlimited sitting, lifting 25 pounds frequently and 50 pounds occasionally, avoiding ladders, balancing occasionally, and stooping, kneeling, crouching, and crawling frequently. *See* [*id.* at 620-21]. The VE testified that such an individual could not perform Mr. Saiz's past relevant work but could perform the jobs of office helper, storage facility rental clerk, and mail clerk, non-postal—each of which are a light exertion jobs with an SVP of 2. *See* [*id.* at 622-23]. The ALJ then asked whether this same individual,

further limited by an inability to consistently work 40 hours per week and who missed at least three days per month, could perform any work that existed in the national economy. [*Id.* at 623]. The VE responded that such an individual could not perform any work. [*Id.* at 623].

On November 19, 2018, the ALJ issued a decision partially denying Plaintiff's applications for DIB and SSI. *See* [#11-11 at 564]. The ALJ concluded that prior to March 3, 2018 Plaintiff had the ability to perform jobs that existed in the national economy but did not have the ability to perform any jobs <u>after</u> March 3, 2018, thereby finding Mr. Saiz disabled after March 3, 2018. *See* [*id.* at 571, 580]. Thus, at step five the ALJ determined Mr. Saiz was disabled after March 3, 2018, when Mr. Saiz turned 55 years old. *See* [*id.* at 581]. Plaintiff requested the Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [*id.* at 557]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on January 23, 2020, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) in this action.

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove she was disabled prior to his date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. The earliest a claimant can receive SSI is the month following the month within which the claimant filed his application, and thus the claimant must establish that she was disabled on or prior to his application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* §

4

416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905.  And when a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "The claimant bears the

burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

On appeal, Mr. Saiz challenges the ALJ's RFC assessment, arguing the ALJ (1) did not have valid reasons for rejecting Velma Campbell, M.D., M.P.H.'s ("Dr. Campbell") opinions and (2) did not have a proper basis for assigning more weight to Angelo Dilullo, M.D.'s ("Dr. Dilullo") opinion than Dr. Campbell's opinion. For the following reasons, I respectfully disagree with Mr. Saiz.

## I. The RFC Assessment – Weighing the Medical Opinions

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells*

6

*v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must also address medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). The Social Security regulations afford a treating source opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *cf. Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1071 (D. Colo. 2016) ("The distinction between *not inconsistent* and *consistent* is significant. The treating source opinions should not be accorded controlling weight if they contradict other substantial evidence in the record, but they do not necessarily have to reach the exact same conclusions." (emphasis in original)). Generally, the opinion of an examining source is entitled to more weight than the opinion of a non-examining source. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(1). Indeed, the opinion of a treating or

7

examining source is in no way "dismissable," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

But even if the ALJ does not afford the treating source opinion controlling weight, the ALJ owes that opinion deference and must weigh that opinion using all the factors provided in 20 C.F.R. § 404.1527(c)(1)-(6). *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); SSR 96-2p, 1996 WL 374188, at *4. These factors include:

1. the length of the treatment relationship and the frequency of examination;

2. the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

3. the degree to which the physician's opinion is supported by relevant evidence;

4. consistency between the opinion and the record as a whole;

5. whether or not the physician is a specialist in the area upon which an opinion is rendered; and

6. other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation marks omitted). Ultimately, the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the treating source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted); *accord Golden-Schubert v. Comm'r, Soc. Sec. Admin.*, 773 F. App'x 1042, 1050 (10th Cir. 2019) ("An ALJ is not required to expressly discuss each factor in deciding what weight to give a medical opinion.").

The ALJ determined that Mr. Saiz retained the RFC to

> perform a range of light work . . . more specifically, he could lift or carry up to 25 pounds frequently and 50 pounds occasionally; has no restriction on sitting; and could stand or walk with normal breaks for 6 hours in an 8-hour workday but stand or walk for only 10-20 minutes at a time. He could perform pushing/pulling with upper and lower extremities within the weight restrictions given but he must avoid foot levers with the left lower extremity. He can frequently perform bilateral manual dexterity for both gross and fine manipulation with both handling and reaching. He should avoid unprotected heights and vibrations. He could perform postural activities frequently, such as stooping, crouching, kneeling and crawling. He should never climb ladders, ropes or scaffolds, and can occasionally balance.

*See* [#11-11 at 572]. Mr. Saiz challenges the ALJ's RFC assessment, arguing the ALJ did not have a proper basis for assigning more weight to Dr. Dilullo's opinion than Dr. Campbell's and did not have valid reasons for rejecting Dr. Campbell's restrictions.[2] *See* [#13 at 3]. According to Mr. Saiz, had the ALJ afforded proper weight to Dr. Campbell's medical opinion, the ALJ would have found Mr. Saiz disabled as of his alleged onset date. *See* [#13 at 4]. For the following reasons, I respectfully disagree with Mr. Saiz.

### A. Dr. Campbell

At the request of Mr. Saiz's attorney, Dr. Campbell conducted a consultative examination of Plaintiff on March 5, 2015. *See* [#11-10 at 520]. Mr. Saiz discussed his history of various physical ailments and explained that his current issues consisted of low back pain with intermittent right leg tingling and chronic neck pain with intermittent arm tingling. [*Id.* at 520-21]. Dr. Campbell reviewed Mr. Saiz's relevant medical history and observed that Mr. Saiz appeared well, shifted occasionally due to pain, displayed a slightly uneven gait to the left, and moved on and off

---

[2] The record contains, and the ALJ considered, a third medical opinion from Matthew Simpson, M.D. ("Dr. Simpson"), who performed a consultative medical examination of Mr. Saiz in November 2013. *See* [#11-11 at 576]. While the ALJ considered Dr. Simpson's consultative opinion in the RFC assessment, Mr. Saiz does not appeal that consideration. Accordingly, the court does not address Dr. Simpson's opinion, other than to note that the ALJ afforded Dr. Simpson's opinion little weight because Dr. Simpson opined that Mr. Saiz had no postural or manipulative limitations—a finding the ALJ concluded was inconsistent with the medical evidence and examination results, including those of Dr. Campbell. *See* [*id.*].

the exam table cautiously but without difficulty. [*Id.* at 523]. A physical examination revealed no neck muscle spasms but some tenderness; some diminished sensation in both hands but otherwise intact upper extremities with normal grip and muscle strength; negative straight leg raises with some back tenderness; and intact lower extremities with some diminished sensation in the left foot but otherwise full strength and range of motion. *See* [*id.* at 524]. Dr. Campbell attributed the upper extremity and lower extremity numbness and tingling to Mr. Saiz's degenerative disc disease and carpal tunnel syndrome. *See* [*id.*].

Based on her examination of Mr. Saiz and a review of Mr. Saiz's medical records, Dr. Campbell recommended the following limitations:

- lifting and carrying 20 pounds for less than 2 hours per day;
- lifting an carrying 10 pounds for less than 4 hours per day;
- lifting and reaching overhead with 10 pounds for less than an hour per day;
- no climbing ladders or other structures;
- bending and stooping for less than 3 hours per day;
- squatting, kneeling, and getting off the floor for less than 2 hours per day;
- standing and walking no more than 3 hours per day on even surfaces;
- no limits on sitting or seated activities;
- handling, gripping, and reaching less than 2 hours per day; and
- fine coordination with hands less than 3 hours per day.

*See* [*id.* at 525].

The ALJ gave Dr. Campbell's opinion little weight because her opinion "was not entirely consistent with the examination findings, was partly based on [] subjective pain complaints" the ALJ did not find fully supported by the record, and was "otherwise not fully consistent with the

medical evidence of record as a whole," including the opinion of Dr. Dilullo. [#11-11 at 579]. In reaching this conclusion, the ALJ undertook a comprehensive discussion of the medical record. *See* [*id.* at 574-80]. For example, the ALJ began with a discussion of the medical evidence pre-dating Mr. Saiz's alleged onset and found that treatment records from 2010, 2011, and 2012 revealed several instances where medical providers indicated that Mr. Saiz had a normal gait, full strength in his upper and lower extremities, full grip strength bilaterally, and full range of motion in his upper and lower extremities. *See* [*id.* at 574-75]. The ALJ also discussed objective testing documenting Mr. Saiz's alleged ailments, as well as Mr. Saiz's subjective complaints. *See* [*id.*]. The ALJ explained that this evidence did not support Dr. Campbell's opinion that Mr. Saiz's marked limitations had been present since 2012. *See* [*id.* at 575].

The ALJ continued with a discussion of the medical evidence from 2014, including examinations suggesting a weakly positive rheumatoid arthritis test. *See* [*id.* at 577]. However, a rheumatology consultant concluded that Mr. Saiz likely did not have rheumatoid arthritis based on other normal test results, and the ALJ noted that Dr. Campbell likewise found no stigmata of rheumatoid arthritis. *See* [*id.*]. The ALJ further discussed the remaining treatment records from 2014, which largely documented Mr. Saiz's various ailments but which contained largely unremarkable examination findings, such as normal gait and full strength. *See* [*id.* at 577-78].

The ALJ then considered Dr. Campbell's opinion in full. *See* [*id.* at 578]. The ALJ explained that Dr. Campbell recommended greater restrictions than Drs. Dilullo and Simpson and concluded Dr. Campbell's restrictions were partly based on Mr. Saiz's subjective complaints that the ALJ did not find fully credible. [*Id.* at 578-79]. Further, the ALJ found Dr. Campbell's opinion inconsistent with her own medical records and the overall record. This was because Mr. Saiz, like his previous examinations, did not have difficulty getting on and off the exam table despite some

cautious stepping; Mr. Saiz's lower extremity strength was 5/5 with no lumbar spine spasms or positive leg raises; Mr. Saiz's upper extremity strength was 5/5 with full range of motion and coordination; and Dr. Campbell's findings did not reveal a significant deterioration in Mr. Saiz's health since prior examinations. *See* [*id.* at 579].

The ALJ concluded with a discussion of the medical evidence occurring after Dr. Campbell's examination. This included an October 2016 X-ray revealing neural foraminal narrowing in the spine and noting upper extremity pain, but the treatment notes also indicated no weakness in Mr. Saiz's hands or lower extremities, normal gait, and overall good health. [*Id.*]. Additional treatment notes from 2017 indicated that Mr. Saiz suffered from mild carpal tunnel syndrome in the right hand and moderate in the left hand, but surgery was not recommended, and Mr. Saiz reported that physical therapy helped the pain go away. [*Id.*]. Finally, Mr. Saiz reported in 2018 that he was set to begin a new job at Fort Carson, and his treatment notes revealed full range of motion in all joints and normal sensation, reflexes, coordination, and muscle strength and tone. [*Id.*].

Based on her discussion of the medical record, the ALJ concluded Dr. Campbell's opinion was entitled to little weight. The ALJ further concluded that Dr. Dilullo's opinion was most consistent with the record and entitled to greater weight. *See* [*id.* at 578-80].

Mr. Saiz argues that the ALJ did not have valid reasons for rejecting Dr. Campbell's restrictions, and had the ALJ afforded proper weight to Dr. Campbell's opinion, the ALJ would have found Mr. Saiz disabled from is alleged onset date. *See* [#13 at 3-4; #15 at 6-7]. Mr. Saiz contests each of the reasons the ALJ purportedly relied on to reject Dr. Campbell's opinions, arguing that the ALJ impermissibly cherry-picked evidence supporting a finding of non-disabled and substituted her own medical judgment for that of Dr. Campbell. *See* [#13 at 14-22; #15 at 2-

6]. The Commissioner counters that the ALJ permissibly weighed the medical opinions and properly resolved the apparent inconsistencies between those opinions and the medical record. *See* [#14 at 11]. Further, the Commissioner argues that the ALJ's decision makes clear the reasons she rejected Dr. Campbell's restrictions and Plaintiff's arguments to the contrary would require this court to impermissibly reweigh the evidence. *See* [*id.* at 11-18]. I respectfully agree with the Commissioner.

First, Mr. Saiz takes issues with the ALJ's purported rejection of Dr. Campbell's opinion based on Mr. Saiz's ability to get on and off the examination table without difficulty, arguing that the ability to get on and off the examination table does not translate to the capacity for standing and walking. *See* [#13 at 14]. Mr. Saiz further argues that the ALJ ignored Dr. Campbell's observation that Mr. Saiz shifted uncomfortably in his chair. *See* [*id.*]. But it is not clear that the ALJ equated Mr. Saiz's ability to get on and off the examination table with his standing and walking capabilities. Rather, the ALJ appears to have acknowledged the similarities between Drs. Dilullo's and Campbell's observations that Mr. Saiz was able to get on and off the examination table without difficulty as one of several reasons to reject Dr. Campbell's severe restrictions, not necessarily to reject Dr. Campbell's standing and walking limitations. *See Golden-Schubert*, 773 F. App'x at 1050 (explaining that citation to inconsistent evidence is one way an ALJ can support her decision for affording little weight to a medical source opinion).

Next, Mr. Saiz argues that the ALJ improperly relied only on the normal examination findings in rejecting Dr. Campbell's severe restrictions and ignored the medical evidence supporting greater restrictions. *See* [#13 at 14-18]. To be sure, an ALJ must discuss the evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.

1996). This is especially true when weighing medical source opinions, as an ALJ "'is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). But such is not the case here. The ALJ rightfully noted the internal inconsistencies between Dr. Campbell's severe restrictions and Dr. Campbell's largely normal examination findings, such as normal gait, full strength in all extremities, and normal range of motion. *See Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 814-15 (10th Cir. 2015) ("Discrepancies between a treating physician's very restrictive functional assessment and that physician's contemporaneous treatment notes are a legitimate factor for discounting a medical opinion." (citing *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002)). Moreover, the ALJ's thorough discussion of the longitudinal medical record belies Mr. Saiz's suggestion that the ALJ ignored contradictory evidence, given that much of the medical evidence revealed largely normal examination results. *See, e.g.*, [#11-8 at 356; #11-9 at 394, 405, 430, 432; #11-10 at 510-13; #11-16 at 821; #11-17 at 846, 849, 858, 860, 867, 874, 877, 881, 891, 912, 935-36, 944, 960, 964].

Mr. Saiz continues that the ALJ impermissibly substituted her judgment for that of Dr. Campbell by concluding that Dr. Campbell's restrictions were not consistent with the medical record and were based in part on Mr. Saiz's subjective complaints that the ALJ did not find fully credible. *See* [#13 at 18-19]. Mr. Saiz is correct that an ALJ may not substitute her judgment for that of a medical expert based on the ALJ's own speculation or lay judgment, *see McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), or her conclusion that the claimant is not credible, *see Williams v. Colvin*, No. 13-CV-1423-MSK, 2015 WL 4237593, at *10 (D. Colo. July 14, 2015); *Neydavoud v. Astrue*, 830 F. Supp. 2d 907, 913 (C.D. Cal. 2011) ("The ALJ is not allowed

to use his own medical judgment in lieu of that of a medical expert." (internal brackets, quotations, and citation omitted)).  But the ALJ provided a thorough discussion of the medical record and explained how Dr. Campbell's severe restrictions were inconsistent with that evidence.  *See Mullins v. Comm'r of Soc. Sec.*, No. 1:15-CV-104, 2015 WL 9854828, at *8 (S.D. Ohio Dec. 21, 2015) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rending an RFC finding." (internal quotations and citation omitted)).  Further, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Chapo v. Asture*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotations and citations omitted).  And the ALJ's conclusion that Dr. Campbell's restrictions appeared based in part on Mr. Saiz's not fully credible subjective complaints was only one of several reasons for rejecting Dr. Campbell's restrictions—I find no error in this regard.  *Cf. Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005) (reversing the ALJ's decision to afford little weight to a medical source opinion where the ALJ discounted the opinion "*solely* for the reason that it was based on Mrs. Thomas's responses" to the psychologist's examination, which "impermissibly substitutes [the ALJ's] judgment for that of [the psychologist].").

Finally, Mr. Saiz challenges the ALJ's comparison of Dr. Campbell's opinion to Drs. Simpson and Dilullo's respective opinions.  *See* [#13 at 19-21].  It is the ALJ's responsibility to resolve any conflicts between medical source opinions, and nothing requires the ALJ to fully embrace one opinion over another.  *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016).  Although the ALJ afforded Dr. Simpson's opinion little weight, the ALJ did not err by noting the discrepancies between Dr. Campbell's severe restrictions and Dr. Simpson's slight restrictions.  *See Thurston v. Colvin*, No. 15-1378-SAC, 2016 WL 6905901, at *5 (D. Kan. Nov. 22, 2016) ("Based on the . . . conflicting medical and medical opinion evidence, the court finds no clear error

in the ALJ's evaluation of the medical evidence or in the ALJ's RFC findings. The court will not reweigh the evidence."). Further, the ALJ provided adequate reasons for rejecting Dr. Campbell's severe restrictions and accepting Dr. Dilullo's more moderate limitations. To find otherwise would require this court to reweigh the evidence, which it may not do, *see Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000), and the court likewise cannot "displace the agency's choice between two fairly conflicting views," *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (brackets omitted). And "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo*, 682 F.3d at 1288.

Based on the foregoing, the court finds no error in the ALJ's assessment of Dr. Campbell's opinion. The ALJ provided specific, legitimate reasons for her decision—nothing more is required. *See Oldham*, 509 F.3d at 1258 (holding that the ALJ's discussion of contrary, well-supported medical evidence provided a sufficient basis for giving a treating source opinion very little weight). "Given the nature and limits of our review, and given as well the detailed reasons offered by the ALJ for rejecting Dr. [Campbell's] opinion, we do not second-guess [her] decision." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001)

### B.     Dr. Dilullo

On May 5, 2012, Mr. Saiz presented to Dr. Dilullo for a consultative exam. *See* [#11-10 at 548]. Mr. Saiz's disclosed his history with his chief complaints of left foot numbness, Bell's palsy, hernia, back pain, and hand numbness. *See* [#11-10 at 548-49]. Dr. Dilullo noted that Mr. Saiz was pleasant, well appearing, cooperative, and consistent; sat comfortably in a chair; and was able to get on and off the exam table without difficulty. *See* [*id.* at 550]. Upon physical examination, Dr. Dilullo noted negative straight leg raises; full range of motion in the left ankle

and no tenderness; mild spasms and tenderness in the back but normal spinal contours; negative Phalen's and Tinel's, no swelling or redness in the hand joints, and normal grip strength; full motor strength; normal fine touch sensation; and full mental capacity based on a mini-mental status exam. *See* [*id.* at 550-53]. Dr. Dilullo opined that Mr. Saiz's ailments did not appear chronic in nature. *See* [*id.* at 553].

Based on his examination of Mr. Saiz, Dr. Dilullo recommended the following limitations:

- standing and walking up to 6 hours per day, but only in 10 to 20-minute increments;
- sitting up to 8 hours per day;
- lifting and carrying 50 pounds occasionally and 25 pounds frequently;
- no climbing ladders;
- balancing occasionally;
- stooping, kneeling, crouching, and crawling frequently; and
- reaching, handling, fingering, and feeling frequently, but avoiding repetitive activities;

*See* [*id.*].

The ALJ afforded Dr. Dilullo's opinion great weight. [#11-11 at 575, 578]. The ALJ explained that Dr. Dilullo's limitations were more consistent with the overall medical record. *See* [*id.* at 573, 576]. In reaching this conclusion, the ALJ undertook a comprehensive, narrative discussion of the medical record and explained the consistencies between the medical record and Dr. Dilullo's opinion. *See* [*id.* at 575-80].

Mr. Saiz challenges the ALJ's decision to assign more weight to Dr. Dilullo's opinion than Dr. Campbell's, arguing that the ALJ did not support her conclusion with evidence in the record. [#13 at 23-25]. Largely, Mr. Saiz argues the ALJ erred because Dr. Dilullo did not review imaging studies conducted after Dr. Dilullo rendered his opinion. *See* [*id.* at 24-26]. I respectfully disagree.

For many of the same reasons discussed above, the court concludes that the ALJ properly explained her decision to assign more weight to Dr. Dilullo's restrictions. The ALJ undertook a comprehensive review of the medical record, including the three medical source opinions, and explained why Dr. Dilullo's opinion was most consistent with the medical record. *See, e.g.*, [#11-11 at 575-80]. Nothing more is required. *See Oldham*, 509 F.3d at 1258.

Further, the court is not convinced that the ALJ erred by finding Dr. Dilullo's opinion most consistent with the medical evidence even though Dr. Dilullo did not have the ability to review the imagining studies conducted after issuing his opinion. This is because the ALJ adequately considered this evidence, in addition to the entire record, and the ALJ, not a physician, is responsible for developing a claimant's RFC. *See Chapo*, 682 F.3d at 1288. Moreover, the court's independent review of the medical record reveals substantial support for the ALJ's decision to adopt Dr. Dilullo's moderate restrictions. *See, e.g.*, [#11-8 at 356; #11-9 at 394, 405, 430, 432; #11-10 at 510-13; #11-16 at 821; #11-17 at 846, 849, 858, 860, 867, 874, 877, 881, 891, 912, 935-36, 944, 960, 964].

Indeed, in the time period between Dr. Campbell's report in April 2015, [#11-10 at 520-28], and the date of the onset of disability of March 3, 2018 determined by the ALJ, Mr. Saiz's medical examinations continue to reveal findings that support Dr. Dilullo's opinion regarding his restrictions. In March 7, 2018, Mr. Saiz's treating physician reports that his "[o]verall health appears good;" his gait and muscle tone were both normal; and he was in no acute distress. [#11-17 at 920]. In May 2018, an evaluating physical therapist indicated that Mr. Saiz "has a very good chance of returning to his prior level of function with aggressive treatments to reduce myalgia related symptoms and to restore normal functional capacity of his upper extremities." [*Id.* at 887]. On June 5, 2017, his physical therapy notes reflect a self-report of improvement, including "I

haven't had that pain going up my arms anymore." [*Id.* at 846]. The therapist also noted "improved mobility of B wrists after session." [*Id.* at 847]. On June 7, 2017, the physical therapy records indicate that Mr. Saiz self-reported that his "arms hardly hurt at all now and [he didn't] really notice the symptoms in my hands too much." *Id.* at 849. On January 3, 2018, his treating physician at his annual physical notes that, in evaluating Mr. Saiz's extremities, he had a "normal full range of motion of all joints." [*Id.* at 881]. And there is no indication that as of March 3, 2018, Mr. Saiz's physical impairments suddenly changed; rather, as of March 3, 2018, his age category changed thus altering the ALJ's determination of disability. [#11-11 at 580].

To be sure, the record could support a finding of greater limitations than Dr. Dilullo recommended, but it is the ALJ's, not the court's, responsibility to resolve those inconsistencies. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so."). Mr. Saiz's arguments to the contrary require this court to reweigh the evidence before the ALJ—something the court cannot and will not do. *See id.* Accordingly, I find no error in the ALJ's decision to afford greater weight to Dr. Dilullo's opinion.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: January 11, 2021                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

19